# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3581-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

E.B. (deceased),

     Defendant,

and

D.H., SR.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF D.H., Jr.,
a minor.

_____

     Submitted October 6, 2022 – Decided October 13, 2022

     Before Judges Haas and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0107-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephania Saienni-Albert, Designated Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Todd Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant D.H., Sr.[1] is the biological father of D.H., Jr. Defendant appeals from the July 6, 2021 judgment of guardianship terminating his parental rights to the child. Defendant contends the Division of Child Protection and Permanency (Division) failed to prove each prong of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. Defendant also challenges several evidentiary rulings and further alleges that he received ineffective legal assistance from his

---

[1] We refer to defendant and the children by initials to protect their privacy. R. 1:38-3(d)(12).

trial counsel.  The Law Guardian supports the termination on appeal as it did before the trial court.

Based on our review of the record and applicable law, we are satisfied that the evidence in favor of the guardianship petition overwhelmingly supports the decision to terminate defendant's parental rights.  Accordingly, we affirm substantially for the reasons set forth by Judge Nora J. Grimbergen in her thorough written decision rendered on July 6, 2021.

We will not recite in detail the history of the Division's interactions with defendant and D.H., Jr.  Instead, we incorporate by reference the factual findings and legal conclusions contained in Judge Grimbergen's decision.  We add the following brief comments.

In February 2018, the Division received a referral from a hospital emergency room concerning D.H., Jr.  The nine-year-old child had difficulty walking and presented with bruises on his face, a swollen and red hand, an infected finger, and numerous marks and bruises on the front and back of his body.  The hospital took x-rays and CT scans that revealed D.H., Jr. had approximately twenty-two rib fractures, a healing fracture of his left scapula, probable pulmonary contusions, a small volume of fluid within his pelvis, and other injuries.

3

Defendant, who was the child's sole caretaker, denied any knowledge of how his son sustained these serious injuries, and the child initially refused to provide any information. Eventually, D.H., Jr. revealed that defendant caused the injuries by hitting him on a regular basis. The trial court granted the Division custody of the child and barred defendant from having any contact with him.

The guardianship petition was tried before Judge Grimbergen over multiple days. The Division presented overwhelming evidence of defendant's parental unfitness and established, by clear and convincing evidence, all four statutory prongs outlined in N.J.S.A. 30:4C-15.1(a). In her thoughtful opinion, Judge Grimbergen concluded that termination of defendant's parental rights was in D.H., Jr.'s best interests, and fully explained the basis for each of her determinations.

In this appeal, our review of the judge's decision is limited. We defer to her expertise as a Family Court judge, Cesare v. Cesare, 154 N.J. 394, 413 (1998), and we are bound by her factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007). Applying these principles, we conclude that Judge Grimbergen's factual findings are fully supported by the record and, in light of those facts, her legal conclusions are unassailable.

In so ruling, we reject defendant's contentions that: (1) the Division's and the Law Guardian's experts based their decisions upon "inadmissible hearsay"; (2) the judge incorrectly barred defendant "from obtaining his own expert to evaluate" D.H., Jr.; (3) defendant's trial attorney provided him with ineffective assistance; and (4) the cumulative effect of these errors "caus[ed] an unjust result." We address these contentions in turn.

In Point I of his brief, defendant argues that the trial judge should not have considered the expert opinions expressed by the Division's psychologist, Dr. Barry Katz, and the Law Guardian's psychologist, Dr. Gregory Gambone, because both experts reviewed "voluminous hearsay documents . . . that were not admitted at trial" in the preparation of their reports. These documents included defendant's employment records and suspension notifications, prior domestic complaints involving defendant, and psychological evaluations conducted of defendant by other practitioners. Defendant asserts "there is simply no way to tell whether much of the information [the experts] relied on was inaccurate, because it was never entered into evidence."

Defendant's argument lacks merit. N.J.R.E. 703 plainly states:

> The facts or data in the particular case upon which an
> expert bases an opinion or inference may be those
> perceived by or made known to the expert at or before
> the proceeding. If of a type reasonably relied upon by

experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The records Dr. Katz and Dr. Gambone examined while preparing their respective reports were obviously the type of records routinely relied upon by psychologists in evaluating a parent's fitness. Moreover, each expert discussed defendant's past record of domestic violence, work suspensions, prior evaluations, and therapy with defendant during the forensic interviews. Thus, defendant had ample opportunities to question the accuracy of these documents during the evaluation process. Under these circumstances, Judge Grimbergen properly considered the opinions expressed by Dr. Katz and Dr. Gambone.

In Points II and III, defendant contends that the trial judge incorrectly barred him from retaining a psychologist to perform an evaluation of D.H., Jr. However, this argument is not supported by the record.

At case management conferences on April 3, 2019 and May 8, 2019, defendant's attorney broached the possibility that she would seek to have a psychologist examine D.H., Jr. The Law Guardian objected and requested to speak with the child's therapist prior to requiring D.H., Jr. to relive the trauma suffered at defendant's hands. The judge stated she would wait to hear from the therapist.

6

At the June 5, 2019 case management conference, defendant's attorney again raised this issue. The Law Guardian reported that D.H., Jr.'s therapist believed "asking [the child] to relive the trauma . . . may cause him to be less responsive to treatment and may stunt the healing process."

Judge Grimbergen expressed concern that the evaluation might "have a detrimental effect on" D.H., Jr., and asked defendant's attorney to have the proposed expert "advise the court what . . . he or she would hope to gain from such a . . . meeting and provide me with an outline of what that expert was going to . . . do in this meeting . . . ." The judge stated she was "not inclined to . . . completely foreclose it," but wanted to obtain this information in order "to determine . . . what exactly . . . this expert would hope to gain, what the areas of questioning would be, and . . . how we would go about that." Defendant's attorney stated she "agree[d]" with this approach. However, the defense never provided the requested information and did not again seek to retain an expert to evaluate D.H., Jr.

Based upon the foregoing, it is clear that Judge Grimbergen did not bar defendant from producing an expert to evaluate D.H., Jr. The judge merely asked the defense to provide an outline of the purpose of the evaluation and the manner in which it would be conducted in order to avoid harming the child. This

7

request was plainly reasonable in light of the extreme trauma the child was working through therapy to overcome. Therefore, we reject defendant's contention on this point.

Defendant argues in Point IV that his attorney provided him with ineffective assistance because the attorney did not object to the hearsay information the Division's and the Law Guardian's experts relied upon in their reports and by failing to file a motion to prevent the Division from presenting testimony concerning its psychological evaluation of D.H., Jr. because defendant did not present his own expert. This contention lacks merit.

To establish an ineffective assistance of counsel claim in matters involving the termination of parental rights, a defendant must meet the two-prong test established in Strickland v. Washington, 466 U.S. 668, 687 (1984), which requires a showing that trial counsel's performance was deficient and that, but for the deficient performance, the result would have been different. N.J. Div. of Youth & Family Servs. v. B.R., 192 N.J. 301, 307-09 (2007) (citing Strickland, 466 U.S. at 687, 694). The defendant bears the burden of demonstrating a constitutional violation, as the court will presume that counsel acted competently. United States v. Chronic, 466 U.S. 648, 658 (1984). Defendant has failed to meet that burden here.

A-3581-20

As discussed above, the Division's and Law Guardian's experts properly considered the hearsay information contained in defendant's records. Therefore, there was no basis for defendant's trial attorney to attempt to exclude these reports on this ground.

Similarly, Judge Grimbergen did not bar defendant from arranging for his own expert psychological evaluation of D.H., Jr., provided he submit the reasonable information necessary to enable the court to determine whether such an evaluation would harm the child. In B.R., the Supreme Court held that if a defendant claims trial counsel was ineffective for failing to produce expert or lay witnesses, the "appellant will be required to supply certifications from such witnesses regarding the substance of the omitted evidence along with arguments regarding its relevance." B.R., 192 N.J. at 311. On appeal, defendant has failed to file any certifications demonstrating that a further evaluation of D.H., Jr. was necessary, or that an evaluation could have been conducted without causing additional harm to him. Under these circumstances, we discern no basis for second-guessing the trial attorney's tactical decision not to pursue a psychological evaluation of the child.

Finally, defendant argues in Point V of his brief that the cumulative prejudice of the errors he raises deprived him of a fair trial. Having rejected

defendant's argument that any reversible error occurred during his trial, we also reject his cumulative error argument.

In sum, children are entitled to a permanent, safe and secure home. We acknowledge "the need for permanency of placements by placing limits on the time for a birth parent to correct conditions in anticipation of reuniting with the child." N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004). As public policy increasingly focuses on a child's need for permanency, the emphasis has "shifted from protracted efforts for reunification with a birth parent to an expeditious, permanent placement to promote the child's well-being." Ibid. That is because "[a] child cannot be held prisoner of the rights of others, even those of his or her parents. Children have their own rights, including the right to a permanent, safe and stable placement." Ibid.

The question then is "whether the parent can become fit in time to meet the needs of the children." N.J. Div. of Youth & Fam. Servs. v. F.M., 375 N.J. Super. 235, 263 (App. Div. 2005). After carefully considering the evidence, Judge Grimbergen reasonably determined that defendant was unable to parent D.H., Jr. Under those circumstances, we agree with the judge that any further delay of permanent placement would not be in the child's best interests.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3581-20